IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 98-cv-00630-WYD-MEH

GRYNBERG PRODUCTION CORP., and            [FILED UNDER SEAL]
TRANSWORLD RESOURCES CORP.,

    Plaintiffs,

v.

SUSMAN GODFREY LLP,

    Defendant.

---

**RECOMMENDATION ON MOTION FOR RELIEF AND MOTION TO ENFORCE [SEALED]**

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court are Plaintiffs' Verified Motion for Relief from Order to Pay ("Motion for Relief") [doc #124] and Defendant's Motion to Enforce Judgment and Opposition to Grynberg's Motion for Relief ("Motion to Enforce") [doc #125]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L.Civ.R 72.1(C), the Motions have been referred to this Court for recommendation. The Court recommends that, for the reasons stated herein, the Motion for Relief be **denied** and the Motion to Enforce be **granted in part and denied in part**.[1]

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d

**BACKGROUND**

In October 1992, after two months of negotiation, Plaintiffs and Defendant entered into a contingent fee agreement for Defendant's services regarding a dispute between Plaintiffs and British Gas ("BG"). Motion to Enforce at 1. The Agreement provided that Defendant would be paid 30% of any recovery from the litigation against BG, subject to a cap of $50,000,000.00 if the case settled within a year. *Id.* at 1-2. After several months of litigation, Plaintiffs and BG entered into a Settlement Agreement in July 1993; then, after certain disputes and additional litigation arose concerning the Agreement, entered into a *final* Settlement Agreement in July 1995. *Id.* at 2. In addition to other payments required to be made by BG to Plaintiffs, the Agreement provides that BG would pay Plaintiffs $47,000,000.00 in 40 quarterly installments of $1,175,000.00 each.[2] *Id.*

On January 29, 1998, BG made the first of the 40 fixed quarterly payments to Grynberg. *Id.* at 3. Plaintiffs did not, in turn, make any payment to Defendant under the fee agreement. *Id.* Instead, in or about March 1998, Plaintiffs initiated this action alleging that the fee agreement with Defendant was unreasonable, unenforceable, and in violation of public policy. *See* Doc #1. The District Court granted Defendant's motion to compel arbitration in July 1998, and an arbitration on the claims was held in March 1999. The arbitrator found substantially in favor of Defendant, but modified the fee agreement by reducing the contingency rate to 28% and the cap on fees to $46,666,666.67. Motion to Enforce at 3. He also awarded post-judgment interest at the rate of 10% "on all future amounts that are not paid when due." *Id.*

---

1159, 1164 (10th Cir. 1986).

[2]In addition, BG paid Plaintiffs an initial cash payment of 9,000,000.00, from which, under the fee agreement, Plaintiffs paid Defendant approximately $3,000,000.00 in accordance with the 30% contingency rate in the fee agreement. *Id.*

On August 31, 1999, the District Court granted Defendant's motion for order confirming the arbitration award, and on January 27, 2000, adopted the arbitration award in its entirety and entered final judgment in the case. *See* Docs #45 and #89. Plaintiffs appealed, and on May 7, 2001, the Tenth Circuit affirmed the District Court's Order. *See* Doc #116. The District Court then entered an Agreed Order on June 6, 2001 releasing funds from the Court's registry to Defendant, ordering that the provisions of the Court's January 27, 2000 Order remain in full effect, ordering Plaintiffs to pay Defendant within three business days of Plaintiffs' receipt of each quarterly payment from BG, and dismissing the case with prejudice. *See* Doc #118.

It was not until October 26, 2007 that Plaintiffs filed the within Motion for Relief. In the Motion, Plaintiffs contend that they have, thus far, paid Defendant a total of $23,145,147.57,[3] including 39 quarterly payments of $329,000.00 each, which is 28% of BG's $1,175,000.00 quarterly payment to Plaintiffs. Plaintiffs seek permission to withhold the 40th and last $329,000.00 quarterly payment,[4] based upon a "change in circumstances unforeseen at the time the [Agreed] Order was made." Motion at 1-2.

Plaintiffs allege that, since 2005, an arbitration has proceeded between Plaintiffs and BG, in which Plaintiffs "claim[] more is due" from BG under the Settlement Agreement, and BG claims it has overpaid Plaintiffs under the Settlement Agreement. Motion at 2. Plaintiffs argue that if BG were to succeed in the arbitration, then Defendant will have been overpaid by 28% of the amount BG will be able to recover in the arbitration. *Id.* Plaintiffs claim it would be

---

[3]This amount is disputed by Defendant, but such dispute has no effect on the Court's recommendation.

[4]For purposes of clarification, the 40th payment is not the very last payment necessarily owed to Defendant under the fee agreement, but rather, the last of the quarterly payments making up the total $47,000,000.00 owed by BG to Plaintiffs under the settlement agreement.

3

"inequitable to interpret this Court's Order so that [Defendant] is paid their percentage of settlement payments, when [Plaintiffs] may have to repay those amounts." *Id.* at 3. Plaintiffs request that the Court "grant relief from future payments under the Order until the dispute with [BG] is resolved, and the 'overpayment' issue is settled." *Id.*

Defendant responded in opposition to Plaintiffs' Motion for Relief with a Motion to Enforce the Judgment. Defendant argues, among other things, that the Court's Orders in this matter provide no exception for the requirement that Plaintiffs pay Defendant 28% of BG's quarterly payments within three business days of Plaintiffs' receipt of the payments. Motion to Enforce at 1, 12. Defendant asserts that Plaintiffs "cannot offset a contingent, unmatured liability like BG's counterclaim against its currently-owed debt to [Defendant]." *Id.* at 14.

Moreover, Defendant contends that Plaintiffs were consistently late in paying Defendant each of the last 20 payments owed to Defendant. *Id.* at 6. In particular, Defendant claims that Plaintiffs had received a $32.9 million payment from BG in June 2005, but failed to pay Defendant until October 5, 2005 after Defendant demanded payment. *Id.* at 6-7. Thus, Defendant claims, under the Court's Agreed Order, Plaintiffs owe Defendant $224,946.01 in interest for its untimely payment. *Id.* at 15.

In their Reply and Response to the Motion to Enforce, Plaintiffs focus their arguments on the theory that Defendant "can only collect its 28% fee based on the net amount actually received by [Plaintiffs]." Plaintiffs' Reply at 2. Therefore, Plaintiffs contend, the money they have spent in collecting BG's settlement payments should serve as an offset to their receipts of BG's quarterly payments, and thus, since Defendant benefits from Plaintiffs' collection efforts, Defendant should be responsible for 28% of the money actually spent on collections. *Id.* at 1, 3. Plaintiffs claim that they have paid a total of $558,916.39 in efforts to enforce the Settlement Agreement between

4

Plaintiffs and BG, and that Defendant's share of those expenses should be $156,496.59 (28% of the total). *Id.* at 3. In addition, Plaintiffs argue that Defendant's claim for interest for the 2005 late payment is time-barred. *Id.*

In its Reply, Defendant reiterates that, under the Court's Orders and the Arbitration Award, Plaintiffs may not withhold any payments to Defendant. Defendant's Reply at 2. Defendant also argues that Plaintiffs have paid no money toward collecting the settlement payments, since the payments have been largely paid "in a timely manner" (*id.* at 3), and Plaintiffs instead are attempting, through the arbitration, to obtain additional future payments from BG. *Id.* at 5. Moreover, Defendant contends that it has little or no information regarding the arbitration and the merits of Plaintiffs' claims therein, and thus, should not be required to contribute any legal fees expended in the arbitration. *Id.* Finally, Defendant asserts that its claim for interest on the 2005 late payment is not time-barred, since "the statute of limitations for enforcement of a judgment is ten years in the State of Texas." *Id.* at 6.

## **MOTION FOR RELIEF**

In violation of D.C. Colo. LCivR 7.1(C), Plaintiffs failed to "state under which rule or statute [the Motion for Relief] is filed." Nevertheless, the Court construes the Motion for Relief as brought pursuant to Fed. R. Civ. P. 60(b)(6).

**I.      Standard of Review**

Pursuant to Rule 60(b), "the court may relieve a party ... from a final judgment" for five specified reasons. *See* Fed. R. Civ. P. 60(b)(1)-(5) (2007). Rule 60(b)(6), the subsection apparently relied upon by Plaintiffs, is a catchall provision, allowing relief from judgment for "any other reason justifying relief...." Relief under Rule 60(b) "is extraordinary and may only be granted in exceptional circumstances." *Amoco Oil Co. v. United States Envtl. Prot. Agency,* 231

5

F.3d 694, 697 (10th Cir. 2000). "Parties seeking relief under Rule 60(b) have a higher hurdle to overcome because such a motion is not a substitute for an appeal." *Cummings v. General Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004). "Rule 60(b)(6) relief is ... difficult to attain and is appropriate only when it offends justice to deny such relief. The denial of a 60(b)(6) motion will be reversed only if we find a complete absence of a reasonable basis and are certain that the decision is wrong." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1293 (10th Cir. 2005) (citation and quotations omitted).

Rule 60(b)(6) permits a court to relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment," so long as the motion is filed "within a reasonable time." Fed. R. Civ. P. 60(b)(6) (2007). Therefore, I must analyze (1) whether Plaintiffs' Motion to Enforce was filed within a reasonable time, and if so, (2) whether justice may be offended if Plaintiffs' request for relief is denied. *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1232 (10th Cir. 1999).

## II. Reasonable Time

Again, Rule 60(b) requires that all applications for relief be filed within a reasonable time. That question, in turn, depends upon the facts and circumstances of each case, "taking into consideration the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and prejudice to other parties." *Planet Corp. v. Sullivan,* 702 F.2d 123, 126 (7th Cir. 1983).

Here, although neither party addresses the issue, the interest in finality of this matter must be substantial. The case originated nearly ten years ago in March 1998, was taken to arbitration, the arbitration award was reviewed and confirmed by the District Court, the Court's judgment was taken up on appeal to, and affirmed by, the Tenth Circuit Court of Appeals, then the case was

finally terminated through an Agreed Order in June 2001. No other proceedings took place in this case until the within Motion for Relief was filed in October 2007. Thus, it is reasonable for the Defendant to have considered the matter resolved and to have a substantial interest in the finality of the case.

No reason for the substantial delay in filing the Motion for Relief has been articulated by Plaintiffs. Rather, Plaintiffs simply claim that they should not be required to make the final payment to Defendant since, as a "beneficiary" of BG's settlement payments, Defendant allegedly is responsible for a portion of the legal fees incurred in the BG arbitration. However, it appears undisputed that the arbitration began in 2005. Motion for Relief at 2; Motion to Enforce at 8. Plaintiffs, apparently, initiated the arbitration by claiming that a $32 million payment they received from BG in June 2005 was deficient. *Id.* On or about October 4, 2005, Plaintiffs paid Defendant its 28% share of the $32 million dollars. Thus, Plaintiffs certainly knew in October 2005 that Defendant would benefit from any additional recovery Plaintiffs might receive pursuant to their efforts in the arbitration against BG.

The delay in filing the Motion for Relief has resulted in prejudice to the Defendant. Plaintiffs claim that they expended nearly $559,000.00 in legal fees and costs during the last two years pursuing their claims against BG. Had the Plaintiffs pursued the requested relief herein in a timely fashion, thereby giving Defendant notice of a potential liability, Defendant may have made certain choices or decisions that might have affected its obligation, if any, for the substantial legal fees and costs that have been expended in this matter.

Consequently, the Court finds that Plaintiff's Motion for Relief was not filed in a reasonable time, and thus, recommends that the Motion be denied.

**III.** **"Terms that are Just"**

Should the District Court find that the Motion for Relief was filed within a reasonable time, I recommend that the Motion be denied for Plaintiff's failure to show that the requested relief is justified.

Rule 60(b)(6) grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just.' Fed. R. Civ. P. 60(b)(6) (2007). The Rule does not particularize the factors that justify relief; however, the Rule does provide authority adequate to enable the Court to order relief whenever such action is appropriate to accomplish justice, while also cautioning that it should be applied only in extraordinary circumstances. *See Klein v. United States,* 880 F.2d 250 (10th Cir. 1989) (citing *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863-864 (1988)). A party must make a "compelling showing of extraordinary circumstances" for Rule 60(b)(6) to apply. *Dowell* ex rel. *Dowell v. Board of Educ.,* 8 F.3d 1501, 1509 (10th Cir. 1993). Thus, the Court should grant relief from judgment under Rule 60(b)(6) only "when it offends justice to deny such relief." *Yapp v. Excel Corp.,* 186 F.3d 1222, 1232 (10th Cir.1999).

Here, Plaintiffs' Motion is based in part upon speculation. Plaintiffs claim that, should BG succeed in the pending arbitration, then Plaintiffs will be required to pay back a portion of the settlement proceeds, some of which was paid to Defendant in accordance with the Agreed Order. Plaintiffs' request that they be relieved of the fee obligation to Defendant in an amount that *might in the future* be returned to BG is premature; therefore, I recommend that Plaintiff's Motion for Relief, to the extent that it is based upon future unknown events, be denied without prejudice.

Plaintiffs also claim that, since their efforts to collect payments from BG actually benefit Defendant, Defendant should be responsible for some of the fees and costs associated with the

collection efforts. While Plaintiffs' argument, if true, might appear to be fair and just on its face, the Court finds that Plaintiffs could have contemplated the potential need for collection efforts and expenses at the time they engaged in two months of negotiations, with the assistance of counsel, concerning the fee agreement with Defendant, at the time they challenged the fee agreement in arbitration in March 1998, or even at the time of the preparation of the Agreed Order entered by the District Court in 2001 (especially since BG had been making quarterly payments to Plaintiffs since January 1998). "[T]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests." 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2864 (2003) (citing *Ackermann v. United States,* 340 U.S. 193, 198, (1950)).

The Court finds that Plaintiffs have failed to articulate terms that justify relief in this case. Therefore, the Court recommends that Plaintiffs' Motion for Relief be denied for failure to file within a reasonable time, and for failure to provide a "compelling showing of extraordinary circumstances" that justify relief in this matter.

## **MOTION TO ENFORCE**

In response to Plaintiffs' Motion for Relief, Defendant filed a Motion to Enforce Judgment [doc #125], in which Defendant seeks (1) immediate payment from Plaintiffs of its share of the October 2007 payment from BG, (2) an order requiring Plaintiffs to pay court-awarded post-judgment interest on Defendant's share of the October 2007 payment; (3) an order requiring Plaintiffs to pay court-awarded post-judgment interest on a late payment made in October 2005; and (3) fees and costs associated with the Motion to Enforce. *See* Motion to Enforce at 15. For the reasons set forth below, the Court recommends that the Motion to Enforce be granted in part and denied in part.

First, in light of the Court's recommendation for denial of the Plaintiffs' Motion for Relief, the Court recommends that the District Court grant the Motion to Enforce by ordering immediate payment to Defendant of its share of the October 2007 payment from BG to the Plaintiffs, plus interest in accordance with the District Court's June 6, 2001 Order in this matter.

Next, in its Motion, Defendant seeks enforcement of this District Court's award of ten percent interest for certain late payments; thus, the Plaintiffs' argument that Texas case law is applicable to Defendant's claims is inapposite. Rather, the Defendant is correct that Colorado law governs its Motion to Enforce Judgment, and that the proper statute of limitations for such Motion is twenty years from the date the judgment was filed. *See* Colo. Rev. Stat. § 13-52-102(2) (2007). In this case, Defendant seeks to enforce the District Court's Order and Final Judgment confirming Arbitration Award, dated January 27, 2000, and the Agreed Order entered by the District Court on June 6, 2001. Thus, the Motion and Defendant's requests for relief are not time-barred.

Plaintiffs also argue that Defendant's claim for interest on the October 2005 late payment has been "settled" or otherwise "waived." For support, Plaintiffs attach copies of 2005-2006 letters between the parties' counsel with respect to the late payment. Response to Motion to Enforce, Exh. B. However, there is nothing in the correspondence to indicate that Defendant waived or settled any claims for interest on the October 2005 payment. In fact, it appears from the documents and letters exchanged between the parties that Plaintiffs would not have paid Defendant its share of the non-quarterly payment from BG (which Plaintiffs concede they received in June 2005), if not for Defendant's September 29, 2005 demand for the payment. Motion to Enforce, Exh. 8. It was not until February 2006 that Plaintiffs, after several requests by Defendant, finally disclosed the fact that they had received the BG payment on June 30, 2005, more than three months before they finally paid Defendant its share on October 4, 2005. Motion to Enforce, Exh. 12.

Therefore, the Court recommends that the District Court grant Defendant's Motion to Enforce Judgment by ordering Plaintiffs to pay post-judgment interest, in accordance with the District Court's Order and Final Judgment, on the October 4, 2005 payment. Defendant contends that such interest totals $224,946.01 (Motion to Enforce, Exh. 24), and Plaintiffs have not opposed the amount.

Finally, Defendant seeks its attorneys' fees and costs associated with the preparation of the Motion to Enforce. *See* Motion at 15. Typically, the Court has discretion to impose such sanctions against an attorney or party to the litigation. However, in violation of D.C. Colo. LCivR 7.1C, Defendant has failed to "state under which rule or statute" its request for sanctions is filed, and has failed to provide "[support] by a recitation of legal authority incorporated into the motion." In fact, Defendant has articulated *no* basis upon which to impose a sanction of attorneys' fees and costs; therefore, the Court recommends that the District Court deny the Motion to Enforce Judgment at to Defendant's request for attorneys' fees and costs associated with the preparation of the Motion to Enforce.

## CONCLUSION

Accordingly, and based on the foregoing, the Court makes the following **recommendations**:

(1) that Plaintiff's Verified Motion for Relief from Order to Pay [filed October 26, 2007; doc #124] be **denied**; and

(2) that Defendant's Motion to Enforce Judgment [filed November 8, 2007; doc #125] be **granted in part and denied in part** as follows:

   (a) Defendant's request for immediate payment of its share of the October 2007 settlement payment from BG to Plaintiffs be granted;

   (b) Defendant's request for a payment of interest (as defined and required by the

District Court's June 6, 2001 Order) on the October 2007 payment be granted;

(c) Defendant's request for a payment of interest (as defined and required by the District Court's June 6, 2001 Order) on the October 2005 late payment be granted; and

(d) Defendant's request for attorneys' fees and costs associated with the preparation of the Motion to Enforce Judgment be denied.

The Clerk of the Court is hereby directed to file this Recommendation under seal, and to mail copies of the Recommendation to all counsel of record.

Respectfully submitted this 19th day of December, 2007, in Denver, Colorado.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge